IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| MICHAEL H. PHAM, | § | |
| | § | |
| Plaintiff, | § | |
| | § | |
| v. | § | Civil Action No. H-05-2027 |
| | § | |
| RAYMOND JONES, JR., | § | |
| | § | |
| Defendant. | § | |

**FINDINGS OF FACT AND CONCLUSIONS OF LAW**

On January 10, 2006, the Court conducted a non-jury trial on the above-referenced matter. The Court has reviewed the evidence, the post-trial submissions of the parties, and the applicable law. The Court now enters the following findings of fact and conclusions of law. Any finding of fact that should be construed as a conclusion of law is hereby adopted as such. Any conclusion of law that should be construed as a finding of fact is hereby adopted as such.

**Findings of Fact**

1. Plaintiff Michael H. Pham ("Pham") is a criminal defense attorney who has been licensed to practice law in Texas since November 2000.

2. Defendant Raymond Jones Jr. ("Jones") is also an attorney and has been licensed to practice since November 2001. Since March 2005, his practice has primarily focused on criminal defense.

3. Both Pham and Jones practice primarily in Houston, which is located in Harris County, Texas.

4. Since January 2001, Pham has used a system for soliciting clients, wherein he finds prospective clients through Harris County arrest records. Pham then mails those arrested individuals who have been released from jail a form letter and brochure that he authored informing them of their rights and options as well as of the legal services he provides.

5. In April 2005, Jones began using a version of Pham's letter and brochure to market his own services.

6. Pham first contacted Jones about Jones's unauthorized use of his letter and brochure in April 2005. Jones continued to use the same letter and brochure.

7. Pham submitted an application, deposit and fee for the letter and brochure to the Register of Copyrights. The Register issued certificates of registration for the letter on May 23, 2005 and for the brochure on May 18, 2005.

8. Pham contacted Jones on two occasions in May 2005, informing Jones of his copyrights and requesting that he stop using the letter and brochure to solicit prospective clients. Jones continued to use them to solicit clients.

9. On June 10, 2005, Pham filed the instant action against Jones, asserting claims for federal copyright infringement and state law unfair practices and competition.

10. Following a June 13, 2005 hearing, the Court issued a temporary restraining order restricting Jones's use of the letter and brochure. Subsequently, the parties agreed upon a preliminary injunction that prohibited Jones from using the letter and brochure.

11. Jones did not use the letter or brochure after August 5, 2005.

12. Pham sought discovery from Jones relative to recipients of the copied letter and brochure and his gross revenues for criminal defense services provided during the infringement period. Pham also requested Jones's list of his fees to represent defendants who have been charged with misdemeanors and felonies.

13. In response, Jones reported he had no lists of who received the letter, no documentation regarding his gross revenues, and no specific price list or fee schedule.

14. On October 12, 2005, United States Magistrate Judge Stephen Wm. Smith granted Pham's motion to compel the information listed in No. 12. Judge Smith subsequently ordered Jones to pay Pham $500 in attorneys' fees incurred as a result of Pham's motion to compel.

15. On December 23, 2005, the Court granted Pham's motion for summary judgment on his claim for copyright infringement, but reserved for trial the issue of damages. The Court also denied summary judgment as to Pham's state law

claims.[1]

16. Pham testified he sends out about 225 letters and brochures every day, which typically results in fifteen new clients each week. He stated that the mail-outs generate about ninety-five percent of his business.

17. Pham testified he noticed a twenty-five percent decline in business around the time Jones began practicing criminal law. He testified that whenever a noticeable decline in business occurs, he contacts his clients and asks them to send him the solicitation letters they have received from other attorneys.

18. In reviewing the letters his clients had received, Pham discovered Jones's letter and brochure, which virtually mirrored his own.

19. Jones testified that he consulted with an advertiser/distributor about composing a solicitation letter and sent the first letter out on April 18, 2005. He stopped mailing that letter following the June 13, 2005, temporary restraining order hearing.

20. At trial, Pham asserted that Jones had violated the parties' agreed preliminary injunction by continuing to mail out a solicitation letter that was substantially similar to Pham's letter.

---

[1] At trial, Pham's counsel stated he was no longer pursuing his state law claims against Jones. Accordingly, they are dismissed from the suit. The Court notes that Jones did not respond to Pham's summary judgment motion.

21. Jones stated that after the injunction issued, he consulted with the advertiser and changed the letter before having it sent out again so it would no longer be substantially similar to Pham's solicitation letter.

22. Jones ceased sending out all letters and brochures on August 5, 2005.

23. The Court compared Pham's letter with Jones's post-injunction letter. Both letters include the attorneys' letterhead and information at the top. The letters substantively begin with a boxed statement informing potential clients their names were obtained from county arrest records. Both contain almost identical formats and wording, except for six instances in which Jones changed one word or added minor phrases to a sentence.

24. At trial, Pham submitted invoices from Pronto Direct Mail Marketing ("Pronto"), the company Jones used to produce and mail his letter and brochure. Based on those invoices, Jones spent $9,445.13 mailing out the letter and brochure to prospective clients between April 18, 2005 and August 5, 2005.

25. As of the trial, Jones had not produced any documents regarding either the list of people who received the copied letter and brochure or his gross revenues. Jones further testified he did not maintain a set fee schedule for prospective clients, and he had not yet paid the $500 in attorneys' fees ordered by Judge Smith.

26. Because he had not been provided any information regarding Jones's gross revenues, Pham went to the Harris County District Clerk's Office and obtained certified copies of the felony and misdemeanor cases in which Jones had appeared as a defendant's attorney of record.[2]

27. The certified copies indicate Jones represented clients on forty-three misdemeanors and twenty-eight felonies in Harris County courts between April 18, 2005 and August 5, 2005.

28. Pham noted that the cases described in Paragraph No. 27 only reflect Jones's criminal cases that had been reset for the defendants to appear again at a later date. The district clerk's office does not have a search mechanism to retrieve records for Jones's cases in which a client and the state reached a plea agreement during Jones's first court appearance.

29. According to the letter and brochures that Jones sent out, Jones charges between $100 and $300 for misdemeanor cases and between $500 and $750 for felony cases. Pham's fee ranges are identical.

30. Pham testified that if a case was reset more than one time, his fee would be $300

---

[2] The District Clerk's Office, which receives the felony and misdemeanor charging instruments in criminal cases, generates and maintains the physical file for each case. *See* Harris County District Clerk's Office, http://www.hcdistrictclerk.com/Criminal/Criminal.aspx **(last visited May 5, 2006).**

for a misdemeanor and $750 for a felony.[3] Pham further testified these fees are reasonable and standard for the attorneys who use a mail-out system to solicit clients in Harris County.

31. Based on the documentary evidence, Jones earned $12,900 on misdemeanor cases and $21,000 on felony cases in Harris County between April 18, 2005 and August 5, 2005. Thus, Jones's earnings totaled $33,900.

32. Pham seeks $36,300 in monetary damages for Jones's copyright infringement and an injunction prohibiting Jones's further use of the letter and brochure.[4]

33. Additionally, Pham seeks attorneys' fees and costs in the case. Specifically, Pham seeks to recoup $11,100 from his lead counsel at trial, whose billing rate is $250 an hour, and $18,000 for the initial intellectual property attorney he retained who bills at the rate of $220 an hour. Pham also asks to recoup $570 in costs, which includes the fees associated with filing and service of process in addition to his attainment of certified copies of Jones's criminal representations

---

[3] Again, the Court notes that Jones stated that he did not keep financial records so as to be able to testify to what fees he charged to the clients he represented between April 18, 2005 and August 5, 2005.

[4] Pham seeks to recover Jones's fees through August 29, 2005; the Court's calculations listed in Paragraphs 27 and 31 only run through August 5, the end of the infringement period.

during the infringement period.[5]

34. Finally, Pham asks the Court to order Jones to pay the $500 award previously ordered by Judge Smith.

## Conclusions of Law

1. The Court has jurisdiction pursuant to 28 U.S.C. § 1331 and 28 U.S.C. § 1338(a).

2. Venue is proper pursuant to 28 U.S.C. § 1391(b)(2) because a substantial part of the events giving rise to the claim occurred in Harris County, Texas, which is within the Southern District of Texas.

3. The Court incorporates by reference its Order granting summary judgment on Pham's copyright infringement claim for the time period between April 18, 2005 and June 13, 2005, the date the preliminary injunction issued.

4. After undertaking a side-by-side comparison of Pham's solicitation letter with Jones's post-injunction letter, the Court concludes Jones's post-injunction letter still was substantially similar to Pham's. *See Bridgmon v. Array Sys. Corp.*, 325 F.3d 572, 577 (5th Cir. 2003) (quoting *Creations Unlimited v. McCain*, 112 F.3d 814, 816 (5th Cir. 1997)).

5. Thus, the Court determines that the copyright infringement occurred between

---

[5] According to Pham, this tab does not include the costs of registering his copyrights.

April 18, 2005 and August 5, 2005.

6. Pham asserts claims for monetary damages against Jones. He further seeks to enjoin Jones from further using his copyrighted letter or brochure and to recover attorneys' fees and court costs for prosecuting this action.

*Monetary Damages for Copyright Infringement*

1. In general, a copyright owner who has established an infringement under the Copyright Act is entitled to choose between two types of monetary damages. 17 U.S.C. § 504(a)-(c)(1); *Berg v. Symons*, 393 F. Supp. 2d 525, 545-46 (S.D. Tex. 2005). The copyright owner may elect to recover either actual damages and the infringer's profits or statutory damages. § 504(c); *see also Estate of Vane v. The Fair, Inc.*, 849 F.2d 186, 187-88 (5th Cir. 1988); *Action Tapes, Inc. v. Glovier*, No. 3:05 CV 1089 R, 2006 WL 349804, at *2 (N.D. Tex. Jan. 12, 2006).

2. In the instant case, Pham has elected to recover his actual damages and any of Jones's profits attributable to the infringement. *See Taylor v. Meirick*, 712 F.2d 1112, 1120 (7th Cir. 1983) (explaining that allowing a copyright owner to recover actual damages plus the infringer's profits "makes any would-be infringer negotiate directly with the owner of a copyright that he wants to use, rather than bypass the market by stealing the copyright and forcing the owner to

seek compensation from the courts for his loss . . . .").

3. At trial, Pham did not offer evidence as to the actual damages he suffered, but instead focused on Jones's profits from the use of the copyrighted letter and brochure.

4. Pursuant to § 504(b), courts employ a burden-shifting framework to calculate an infringer's profits. *See* § 504(b); *Estate of Vane*, 849 F.2d at 188. First, the copyright owner must present proof of the infringer's gross revenues. *See* § 504(b); *Estate of Vane*, 849 F.2d at 188; *see also Dayva Int'l, Inc. v. Award Prods. Corp.*, No. 97-1397, 1998 WL 105945, at * 2 (Fed. Cir. March 11, 1998). However, gross revenues "refers only to revenue reasonably related to the infringement." *Bonner v. Dawson*, 404 F.3d 290, 294 (4th Cir. 2005). Then, the burden shifts to the infringer "to prove his or her deductible expenses and the elements of proof attributable to factors other than the copyrighted work." § 504(b).[6]

5. The Court finds Pham's attempts to determine Jones's gross revenues during the infringement period–first via discovery and then by his own records search at the Harris County Courthouse–were more than sufficient. *See generally Compaq*

---

[6] The Court notes that any questions as to whether an expense is deductible should be resolved in favor of the copyright owner. *See, e.g., In Design v. K-Mart Apparel Corp.*, 13 F.3d 559, 564 (2d Cir. 1994).

*Computer Corp. v. Ergonome Inc.*, No. Civ.A. H-97-1026, 2001 WL 34104827, at *2 (S.D.Tex. June 27, 2001) (noting that a copyright owner was entitled to discovery of infringer's gross revenues that were reasonably related to the alleged infringement). Therefore, the Court finds Pham established by a preponderance of the evidence that Jones's gross revenues were $33,900 during the infringement period of April 18, 2005 through August 5, 2005.

6. Thus, the burden shifts to Jones to prove deductible expenses and any profits attributable to factors other than the copyrighted work.

7. The only evidence before the Court regarding Jones's expenses are invoices from Pronto for the costs associated with printing and mailing the letter and brochure proffered by Pham at trial.[7] Because such costs relate to the production and distribution of the letter, the Court finds them deductible from Jones's gross revenues. *See Burns v. Imagine Films Entm't, Inc.*, No. 92-CV-2438, 2001 WL 34059379, at *6 (W.D. N.Y. Aug. 23, 2001). Thus, the invoices demonstrate by a preponderance of the evidence that Jones's deductible expenses were $9,445.13.

8. The Court notes Jones testified that "a good portion but not most" of his clientele during the infringement period was generated by the letter and

---

[7] Pham appears to concede that costs related to the mail-out are deductible.

brochure; the remainder, he stated was the result of referrals. However, Jones failed to support this assertion with documentation showing the portion of his gross revenues between April 18, 2005 and August 5, 2005 attributable to factors other than the copyrighted letter and brochure, such as word-of-mouth advertising. *See Bus. Trends Analysts, Inc. v. Freedonia Group, Inc.*, 700 F. Supp. 1213, 1240 (S.D.N.Y. 1988) (reasoning that if the infringer does not sufficiently establish deductible expenses or a court finds his or her attempt to be "unacceptable," then the copyright owner's demonstration of gross revenues remains unchanged), *aff'd in relevant part, rev'd in part*, 887 F.2d 339 (2d Cir. 1989).

9. Thus, Pham is entitled to recover damages equal to Jones's total revenue during the infringement time period minus Jones's expenses related to the use of the letter and brochure.

10. The Court concludes Jones is liable to Pham for $24,454.87 in damages.

*Injunction to Prevent Future Infringement*

1. Pham requests that the Court permanently enjoin Jones from future use of the letter and brochure.

2. Under the Copyright Act, a court may "grant temporary and final injunctions on such terms as it may deem reasonable to prevent or restrain infringement of a


copyright." 17 U.S.C. § 502(a). However, "[p]ermanent injunctive relief is 'never lightly given.'" *Playboy Enters., Inc. v. Webbworld, Inc.*, 991 F. Supp. 543, 561 (N.D. Tex. 1997), *aff'd*, 168 F.3d 486 (5th Cir. 1999).

3. Generally, the person requesting a permanent injunction must establish: (1) actual success on the merits; (2) no adequate remedy at law; (3) that the threatened injury outweighs any damage to the defendant; and (4) that the injunction will not disserve the public interest. *See DSC Comms. Corp. v. DGI Tech., Inc.*, 81 F.3d 597, 600 (5th Cir. 1996) (utilizing the traditional preliminary injunction test in a copyright infringement case).

4. As previously discussed, Pham succeeded on the merits of his claim and thus sufficiently established the first element required for a permanent injunction. *See id.*

5. With regard to the second element, the Court determines that Pham has no other adequate remedy at law. As discussed above, Jones continued infringing on his copyright even after the Court approved the parties' agreed preliminary injunction restricting Jones's use of the letter and brochure. *See generally Playboy Enters.*, 991 F. Supp. at 562 (issuing a permanent injunction after noting that the defendants "have not shrunk from their continuing activities even when put on notice of the infringement"). Moreover, the Court finds that "money

damages in this case will not prevent future infringing activity" by Jones. *See WB Music Corp. v. Big Daddy's Entm't, Inc.*, No. EP-05-CA-267-PRM, 2005 WL 2662553, at *3 (W.D. Tex. Oct. 18, 2005). Without a permanent injunction, Pham may have to file suit again should any infringement occur in the future. *See id.*; *see generally Sailor Music v. Davis*, Civ. A. No. 4:94-CV-112-Y, 1994 WL 736412, at *1 (N.D. Tex. Sept. 30, 1994) (permanently enjoining a defendant whom the court determined was likely to continue infringing on the owner's copyright). Thus, Pham has demonstrated he has no adequate remedy at law.

6. The Court also determines that a permanent injunction would only slightly burden Jones. Under such an injunction, Jones would still be free to use a letter and a brochure to solicit prospective clients, he would simply be prohibited from using Pham's letter and brochure in his mail-outs. Thus, Pham has established the third element of an injunction. *See WB Music Corp.*, 2005 WL 2662553, at *3.

7. Finally, the public has an interest in protecting the viability of copyrights obtained by authors on their works. *See Playboy*, 991 F. Supp. at 561 (finding an affirmative public interest in requiring "strict adherence" to intellectual property law).

8. Thus, the Court concludes that Pham has sufficiently established the four elements required for a permanent injunction. Accordingly, Jones is permanently prohibited from using Pham's letter or brochure in the future.

*Attorneys' Fees*

1. The Copyright Act provides that a district court has discretion to "award a reasonable attorney's fee to the prevailing party as part of the costs." 17 U.S.C. § 505 (2000).

2. Though an award of attorneys' fees to a prevailing party in a copyright suit is discretionary, an award of fees "is the rule rather than the exception and should be awarded routinely." *Positive Black Talk Inc. v. Cash Money Records, Inc.*, 394 F.3d 357, 380 (5th Cir. 2004) (citations omitted).

3. When considering a request for attorneys' fees, courts are guided by a non-exclusive list of factors, including frivolousness, motivation, objective unreasonableness and the need in particular circumstances to advance considerations of compensation and deterrence. *Id.* (quoting *Fogerty v. Fantasy, Inc.,* 510 U.S. 517, 534 n. 19 (1994).

4. In the instant action, the Court finds that Pham's copyright infringement cause of action was not objectively unreasonable or frivolous. Moreover, the attorneys who represented Pham completed several motions, including the motion to

compel discovery from Jones, as well as proceeding to a bench trial. Their billing rates are reasonable, as was their time spent prosecuting this action. The attorneys should be compensated for their work, and the Court finds that such compensation also serves as a deterrence to future copyright infringements. *See id.; see also WB Music Corp.*, 2005 WL 2662553, at *6. Thus, exercising its discretion, the Court grants Pham's request for $29,100 in attorneys' fees, which includes the $500 awarded from Judge Smith.

*Court costs*

1. Pham seeks to recover $570 in court costs, which includes the filing and service of process of the suit in addition to the costs he incurred in generating records to compute Jones's gross revenues. *See* 28 U.S.C. § 1920 (2000).

2. Such costs are recoverable under § 1920. *See* §§ 1920(1), (4). Moreover, the Court determines Pham's costs were reasonable expenditures necessarily incurred during this litigation. *See id.* Thus, Pham's motion for $570 in costs is granted.

## **Conclusion**

According, the Court hereby

ORDERS that Defendant Raymond Jones pay Plaintiff Michael Pham the sum of $24,454.87 in damages for copyright infringement.

ORDERS that Defendant is permanently enjoined from future use of Plaintiff's copyrighted client solicitation letter and brochure. Any violation of this Order shall be punishable by contempt of court. The Court further

ORDERS Defendant to pay Plaintiff $29,100 in attorneys' fees and $570 in court costs.

SIGNED at Houston, Texas, on this 13th day of May, 2006

_____David Hittner_____

DAVID HITTNER

United States District Judge